## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**KENDRA DRONE-NORTH**                                                                        **PLAINTIFF**

**V.**                         **CASE NO. 4:24-cv-00405-LPR**

**ARKANSAS BUREAU OF**
**LEGISLATIVE RESEARCH**                                                      **DEFENDANT**

### DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Comes Defendant Arkansas Bureau of Legislative Research ("BLR"), by and through its counsel, Attorney General Tim Griffin and Senior Assistant Attorney General Carl F. "Trey" Cooper, III, and for its Statement of Undisputed Material Facts ("SUMF"), states:

1. BLR oversees services to the Arkansas General Assembly that include drafting of bills; legal, fiscal, and general research; staff assistance for legislative committees and task forces; and computer and technology support. These services are provided through the following BLR offices and divisions: Administrative Services Division, Fiscal Services Division, Information Technology Division, Legal Services Division, and Research Services Division. BLR has approximately 120 employees at any given time. See paragraph 3 of the Declaration of Director Garrity attached to BLR's Motion for Summary Judgment as Exhibit 1.

2. Plaintiff Kendra Drone-North ("North") was an employee of the Committee Staff Services Section of BLR's Research Services Division (1 of 2 sections in that division), employed as a Legislative Administrative Assistant II. Exhibit 1, ¶ 4.

3. During each year of employment with BLR, North received either a merit salary increase or merit lump sum bonus. In multiple years, she received more than one salary increase, bonus, or other upwards pay adjustment. North's salary history at BLR is attached to BLR's Motion for Summary Judgment as Exhibit 5. *Id.*, ¶ 5.

4. In 2013, North received a 4.5% merit bonus in the amount of $1,485.00. North's merit bonus in 2013 was higher than the following white Administrative Assistants: Wanda Manees (white female), Allison Potratz (white female), Gina Seaton (white female), Barbara Treece (white female), and Kathryn Whittamore (white female). *Id*., ¶ 7.

5. In 2014, North received a 4% merit super bonus in the amount of $1,346.40. North's merit bonus in 2014 was higher than the following white Administrative Assistants: Juanita Giles (white female), Gina Seaton (white female), Barbara Treece (white female), and Juanita Witham (white female). North was the only Administrative Assistant to receive a 4% bonus. *Id*., ¶ 8.

6. In 2015, North received a 3% merit bonus in the amount of $1,019.90. North's merit bonus in 2015 was higher than the following white Administrative Assistant: Barbara Treece (white female) and received the same percentage merit bonus (3%) as Juanita Giles (white female), Wanda Manees (white female), Gina Seaton (white female), Barbara Treece (white female), and Juanita Witham (white female). *Id*., ¶ 9.

7. In 2016, North received a 10% salary increase instead of merit bonus. At that time North's salary was higher than the following white Administrative Assistant: Barbara Treece (white female). *Id*., ¶ 10.

8. In 2017, North received a 3% merit bonus in the amount of $1,133.10. North's merit bonus in 2017 was higher than the following white Administrative Assistants: Teresa Maxwell (white female) and Barbara Treece (white female) and received the same percentage bonus (3%) as Juanita Giles (white female), Teresa Maxwell (white female), Barbara Treece (white female), and Juanita Witham (white female). As part of a new Pay Plan Implementation in 2017, Administrative Assistants' salaries were raised to the new minimum or if the employee's salary already exceeded the new minimum under the 2017 Pay Plan, the employee received a 1% salary

increase. North received a 1% increase along with her merit bonus making her salary $38,147.62. North's 2017 salary was higher than the following white Administrative Assistants: Teresa Maxwell (white female) and Barbara Treece (white female) and received the same percentage pay plan adjustment as Juanita Giles (white female), Wanda Manees (white female), Gina Seaton (white female), and Juanita Witham (white female). *Id.*, ¶ 11.

9. In 2018, Administrative Assistants began receiving merit increases instead of merit bonuses. North received a 3% increase making her salary $39,292.05. In 2018, every Administrative Assistant listed in Exhibit A received a 3% merit increase except for Gina Seaton (white female) who received a 4% merit increase. In 2018, North's salary was higher than the following white Administrative Assistant: Teresa Maxwell (white female). *Id.*, ¶ 12.

10. In 2019, North received a 3% merit increase making her salary $40,392.14. North's merit increase was bigger than the following white Administrative Assistants: Wanda Manees (white female), Teresa Maxwell (white female), Barbara Treece (white female), and Jaunita Witham (white female). North's salary in 2019 was higher than the following white Administrative Assistants: Teresa Maxwell (white female). *Id.*, ¶ 13.

11. In 2020, North received a 9% increase as part of her four year review and a 3% merit increase making her salary $45,348.16. North's merit increase was bigger than the following white Administrative Assistants: Rachel Barnes (white female), Jaunita Giles (white female), and Teresa Maxwell (white female). North's salary in 2020 was higher than the following white Administrative Assistants: Teresa Maxwell (white female) and Barbara Treece (white female). *Id.*, ¶ 14

12. In 2021, North received a 3.5% merit increase and a 3.2% market rate adjustment increase making her salary $48,435.50. North's 2021 salary was higher than the following white

Administrative Assistants: Karlie Cooper (white female), Teresa Maxwell (white female), and Caitlyn Steele (white female). *Id*., ¶ 15

13. In 2022, North received a 2% cost of living raise and a 5% merit increase making her salary $51,874.37. Every Administrative Assistant received a 2% cost of living raise. North's 2022 salary was higher than the following white Administrative Assistants: Karlie Cooper (white female) and Teresa Maxwell (white female). *Id*., ¶ 16

14. Merit increases are determined each year depending on the budget and the increase the Governor provides to state employees. Director Garrity establishes a range of salary percentage increases for employees based on merit. The deputy directors, the chief information technology officer, and the chief fiscal officer provide a list of their employees with recommended salary increases for each employee based on the employee's performance for the previous year. Director Garrity reviews these lists and provide the deputy directors, the chief information technology officer, and the chief fiscal officer a final list with the approved salary percentage increases. *Id*., ¶ 17.

15. Race is not considered when deciding what merit increase each employee receives. *Id*., ¶ 18.

16. North was hired by BLR as an Administrative Assistant on November 20, 2006. On July 2, 2017, she was promoted to an Administrative Assistant II position, under the new pay plan implementation. On April 1, 2016, she received a ten percent (10%) merit increase, and then an additional nine percent (9%) merit increase on April 1, 2020, under the salary adjustment promotion policy referenced in Exhibit 4.[1] *Id*., ¶ 19.

---

[1] All exhibits are attached to BLR's Motion for Summary Judgment.

4

17. BLR's hiring practices are free from bias or discrimination. Positions are posted on the ARCareers website and BLR employees are notified internally of all open positions. BLR strives to always hire the best candidate for every position, as we have an obligation to the Arkansas General Assembly to assimilate the best team of professionals available to assist them in their legislative duties. With regard to internal applicants for open positions, those applicants are considered in the same manner as external candidates. Tenure in a position will not override job performance and ability in hiring considerations. In addition, all internal candidates will be scrutinized based on past performance evaluations, work ethic, and any existing disciplinary record. *Id*., ¶ 20.

18. In addition to being able to apply for open positions within the BLR, many employees' positions have a built-in promotion ladder. This is not encapsulated within the BLR Employee Policy Manual, but is part of our written job descriptions and is explained to employees by their supervisors. With regard to Administrative Assistants, BLR had at the time of North's employment with BLR, the following positions: Administrative Assistant, Administrative Assistant II, Administrative Assistant to the Administrator, Administrative Assistant to the Assistant Director, and Administrative Assistant to the Director. *Id*., ¶ 21.

19. Although North had been an acceptable administrative assistant, she has never shown herself to be someone who is willing to take on additional job responsibilities, such as those necessary to be an administrative assistant to a supervisor or a legislative analyst. *Id*., ¶ 22.

20. North has a history of negativity and harassing behavior towards her supervisors. North was found to have been engaging in bullying behavior towards her former immediate supervisor, Sheri Thomas, Administrator, Committee Staff Services Section, by both the

5

independent investigator hired by BLR, Carolyn Witherspoon, and by the Executive Subcommittee of the Legislative Council. *Id.*, ¶ 23.

21. North's Employee Evaluation for the period from May 1, 2018 to April 30, 2019, in part, states:

> Kendra has not been shy in expressing her thoughts on what she views as pay inequity and stays informed regarding the salaries of various employee. She cites helping new analysts learn their job duties as not part of her regular job duties. We have discussed this before and my position is that because the analyst and AA are a team, sharing knowledge should be an expectation just as when an analyst shows an AA how to format a document or other Word/Excel feature. In addition, many analysts now prepare meeting agendas which traditionally was the responsibility of the AA.
>
> It is my hope that Kendra moves past bringing up what occurred over nine years ago. Annual self-evaluations cover a one-year period and there is no need to rehash the same events over and over.

Exhibit 14.

22. North's Employee Evaluation for the period from May 1, 2019 to April 30, 2020, in part, states:

> While Kendra's work product is generally excellent, an area of improvement is Kendra's willingness to assist with additional tasks. If asked, Kendra will step in and help, but it is my hope that she can do so without being asked. In addition, Kendra's communications with her supervisors are at times defensive and relayed in a negative tone. My goal for Kendra for the following year is that we can have more positive interactions with each other and come to a place of understanding.

Exhibit 15.

23. In a memo[2] dated April 1, 2020, the following was noted:

> I need to take into consideration Kendra's disrespectful and negative attitude for this four-year evaluation. She is often defensive in her communication to her supervisor and, on multiple occasions, has failed to follow the chain-of-command. Kendra at times displays an attitude that she is not a team player and rarely conveys a willingness to help with extra tasks unless specifically asked.

---

[2] There are three drafts of this memo with the first being Sheri Thomas's draft without input from Director Garrity and the final including changes from Director Garrity.

>Additionally, I believe Kendra's overall attitude during this review period has led to morale issues throughout the office. Due to her negative attitude and defensive approach, I am not recommending the full ten percent increase that otherwise might have been available to her

Exhibit 16.

24. BLR had evidence of the concerns regarding bullying or group bullying by North, also known as "mobbing", as documented by Sheri Thomas, describing her repeated confrontational encounters and interactions with North over the years and others that she supervises, and concerns about this behavior are documented by me, Jessica Whittaker, Assistant Director, Research Services Division and Ms. Thomas's immediate supervisor; Estella Smith, former Assistant Director, Research Services Division; and Jill Thayer, Chief Legal Counsel. Exhibit 1, ¶ 24.

25. Examples of bullying encounters are set forth in detail in Exhibits 8-12. A sample of this behavior includes the following incidents:

    a. As documented by Director Garrity on May 14, 2020 (Exhibit 9):

>I spoke with Sheri today about Kendra Drone [North]. Sheri told me that she [North] pretty much called her a liar and was not speaking to her. I asked for specifics. She said that on Monday when Kendra was in the office to staff the committee meeting, she learned that Juanita, who was scheduled to be in, had called out for the week and asked her if she could fill in for the week. Kendra said yes but then went to lunch and called her and told her that she couldn't. Well then, Sheila was sent home for a possible illness and she advised Kendra that she would need to come in. Kendra accused her of knowing about my email when she asked her to be here this week. Estella Smith told me that Kendra told her that Sheri set her up. Sheri said that when she was trying to explain, Kendra would not let Sheri speak. Lastly, Sheri said that yesterday on her way out, Sheri said goodbye and Kendra did not respond. She then said, "so I guess you're not going to talk to me" and Kendra did not respond.

    b. As documented by Estella Smith on June 4, 2020 (Exhibit 11, pg. 12): "It is

>my feeling that Kendra has some hostility against Sheri. At times Kendra

7

        Drone is discussing things with me that reminds me of comments Barbara has made. Kendra and Shelia, on a few occasions, could be found in Barbara's office with the door shut, and the reception area left empty."

c.    As documented by Jessica Whittaker on January 30, 2023 (Exhibit 10): "Sheri told me that Ashley [Miller][3] told her that Kendra came up to her and said she needed to watch her back, and that Sheri did not want her (Ashley) in her new job. Kendra further stated to Ashley that Sheri and Marisa were friends and had known each other before Marisa started her receptionist job."

d.    As documented by Jill Thayer on August 4, 2020 (Exhibit 12, p. 4):

        Kendra called me at lunch time today to tell me that she was upset that she had learned the date of her mediated conversations with Dr. Chamblee and Estella and Sheri via an email from Dr. Chamblee rather than hearing it from Estella. I could not really understand what the source of her upset was in this instance. She said that after she had the email from him, Estella had forwarded her an email about the meetings, but I guess Kendra felt that it was too late at that point. She told me that "this is the kind of thing I'm constantly dealing with." I told her that Dr. Chamblee had reached out to all of them, that it was nothing against her, and that maybe she should give Estella some grace in that she is busy and may not have had a chance to forward the email until then or just genuinely, non-maliciously forgot. She continued to tell me what a problem this was and I recommended that she should bring this up as a recent example of something she has an issue with during her mediated talk with Estella and Dr. Chamblee. She said that she would do that. I thanked her for calling me and told her that I was continuing to document her interactions with her supervisors and would do so with this phone call. I have to say in this documentation that I felt confused by her call and could not pinpoint anything in what she was telling me that was a concern. This type of nitpicking and suspicion of every behavior does lend itself to Estella's previous comments that Kendra always believes there is a conspiracy against her. I frankly found this call to be a little ridiculous.

---

[3] Ashley Miller was Sheri Thomas's Administrative Assistant at that time.

e. As documented by Sheri Thomas on January 11, 2023 (Exhibit 8, p. 22):

> I asked Kendra to attend the House Aging, Children and Youth, Legislative & Military Affairs Committee meeting Destiny Davis, Administrative Assistant, as this is her first meeting of the session. Kendra appeared "put out" that I asked her to attend the meeting with Destiny. This seems to be Kendra's routine when I have asked her to help newer staff. After this encounter I asking Destiny if she felt comfortable, staffing the meetings alone as I did not want to deal with what I feel is negative behavior from Kendra and didn't want to subject Destiny to the negativity. When I informed Kendra that she didn't have to help she seemed pleased and gave Barbara Brown, Legislative Analyst, a "side look." I discuss this situation with my supervisor Jessica Whittaker, Assistant Director, Research Services. I told her that I shouldn't have changed my mind and I was frustrated with myself for letting Kendra have power over my decisions. Kendra's behavior effects our office morale.

*Id.*, ¶ 25.

26. In addition to the excerpts referenced above, BLR has documentation that on March 6, 2023, Sheri Thomas called Jill Thayer to report that North, Barbara Brown, and other employees in her section were "mobbing" her, which is a term for group bullying. Sheri Thomas said that she feels the constant threat of complaint from these employees is impeding her interactions with them and with her other employees, as the allegations of unfair and unequal treatment are constantly in the air. *Id.*, ¶ 26.

27. The independent investigator found that Sheri Thomas's allegations of mobbing and bullying had merit. *Id.*, ¶ 27

28. As stated above, North has a documented pattern of bullying and negative treatment of her supervisors. She was an average and at times difficult employee. She demonstrated many times over the years that she was unwilling to do more than the minimum of what was asked of her. As such, those BLR supervisors in hiring positions, including North's most recent supervisor, Sheri Thomas, of whom North was found to be guilty of bullying, determined that she was not the

best candidate for the positions to which she had applied. These hiring decisions were in no way related to North's race or any other retaliatory or discriminatory reason. North was simply not the best candidate for the job. *Id.*, ¶ 28.

29. BLR has a history of hiring and promoting African American individuals, who were chosen as the best, most qualified candidates for the position. During the term of North's employment, multiple African American individuals, as well as Hispanic and Asian individuals, were hired to fill positions in the various divisions of BLR. *Id.*, ¶ 29.

30. Race is not considered when making hiring or promotion decisions. *Id.*, ¶ 30.

31. North applied for a Legislative Analyst position in October 2022. North interviewed with Sheri Thomas on October 25, 2022. On November 3, 2022, North was informed that she did not get the promotion. Ultimately, Caitlyn Steele was promoted to the position. Caitlyn Steele was a better choice than North because, while a good administrative assistant, due to North's continued negative interactions with Thomas and poor attitude, North was not a good employee. Steele was eligible to be promoted into this position as her last promotion occurred on October 4, 2021, and Steele was promoted into the analyst position on November 21, 2022. *Id.*, ¶ 31

32. In November 2022, a BLR hired Ray Terry to fill a Legislative Analyst position. BLR used the same applicant pool for the position filled by Caitlyn Steele in filling this position. Ray Terry was selected for the position over North because, while a good administrative assistant, due to North's continued negative interactions with Thomas and poor attitude, North was not a good employee. *Id.*, ¶ 32.

33. In June 2020, Director Garrity did make the statement that North would never be promoted to an analyst position because of her constant negativity and poor attitude. Until North's behavior changed, Director Garrity would not reward her with a promotion. A similar statement

was made with regards to Whitney Alexander, a project employee who also displayed a poor attitude and was combative in workplace situations. Alexander was an excellent editor, and, while there were open editor positions within BLR, Alexander was not going to be hired into an open editor position. Alexander is a white female. In addition, BLR employee Megan Condran applied for a position in a different division within BLR. Condran, while an excellent editor, had a history of negative interactions with her supervisor. When the hiring supervisor advised Director Garrity that she had selected Condran for the vacant position, Director Garrity advised the supervisor that Condran was not a good candidate for the position. Condran is a white female. BLR employee Leah Headley was selected for the position instead. Headley is a black female that had less tenure at BLR than Condran, less professional experience than Condran, and only possessed a Bachelor's degree. *Id*., ¶ 33.

  34. During the term of North's employment, multiple African American individuals, as well as Hispanic and Asian individuals, have been hired to fill positions in the various divisions of BLR, including the following:

    a. Heather Browning, African American – hired June 30, 2014, Legislative Analyst, Personnel Section, Fiscal Services Division (promoted to a Legislative Analyst III);

    b. Krystal Cornelius, African American – hired June 26, 2016, Help Desk Coordinator, Information Technology Services Division;

    c. Angelica Mercado, Pacific Islander – hired May 25, 2014, Administrative Assistant, Personnel Section, Fiscal Services Division (now Legislative State Personnel Analyst);

    d.      Destiny Davis, African American – hired October 10, 2022, Administrative Assistant, Committee Staff Services Section, Research Services Division;

    e.      Suba Desikan, Indian American – hired June 3, 2019, Legislative Attorney II, Administrative Rules Section, Legal Services Division;

    f.      Kimberly Jackson, African American – hired February 10, 2020, BLR Support Specialist, Director's Office;

    g.      Shenetta Jimmerson-Allen, African American – hired August 1, 2022, Administrative Assistant, Legal Services Division (temporary employee that was hired into full-time status);

    h.      Jason Kearney, African American – hired May 9, 2022, Senior Legislative Attorney, Administrative Rules Section, Legal Services Division;

    i.      Byron Kincade, African American – hired October 11, 2022, Facilities Coordinator, Administrative Services Division;

    j.      Jayla King, African American – hired July 11, 2022, Administrative Assistant, Administrative Services Division;

    k.      Stephanie Loggins, African American – hired July 26, 2021, Application Support Specialist, Information Technology Services Division;

    l.      Ashley Miller, African American – hired February 3, 2016, Administrative Assistant, Committee Staff Services Section, Research Services Division;

    m.      Michelle Nelson, African American – hired January 1, 2019, Senior Legislative Analyst, Committee Staff Services Section, Research Services Division (now Legislative Committee Lead);

  n. Carlos Silva, Hispanic – hired August 17, 2022, Legislative Economist, Fiscal Services Division;

  o. Brandon Smith, African American – hired October 12, 2020, Legislative Analyst II, Committee Staff Services Section, Research Services Division (now Legislative Committee Senior Analyst;

  p. Joy Stuckey, African American – hired March 27, 2017, Administrative Assistant, Legal Research and Drafting Section, Legal Services Division (promoted to Administrative Assistant II);

  q. Diane Torres-Porter, Hispanic – hired July 13, 2015, Legislative Attorney, Legal Research and Drafting Section, Legal Services Division;

  r. Josh Twitty African American – hired June 18, 2018, Legislative Analyst, Budget Section, Fiscal Division; and

  s. Leah Headley, African American – hired December 16, 2019, Legislative Administrative Assistant, Committee Staff Services Section, Research Services Division.

*Id.*, ¶ 34

  35. The following African American employees were chosen through an application and interview process for promotion from 2012 through 2023:

  a. Andrea Barksdale, Chief Fiscal Officer – Promoted May 8, 2017, previously Fiscal Analyst, Fiscal Services Division (direct report to the Director);

  b. Shonna Amos, Administrative Assistant to the Director – Promoted July 2, 2017, previously Administrative Assistant to the Administrator, Personnel Section, Fiscal Services Division (direct report to the director);

      c.      Estella Smith, Assistant Director, Research Services Division – Promoted September 3, 2019, previously Administrator, Committee Staff Services Section, Research Services Division (direct report to the director);

      d.      Leah Headley, Legislative Analyst, Policy Analysis and Research Section, Research Services Division – Promoted June 14, 2021, previously Administrative Assistant, Committee Staff Services Section, Research Services Division;

      e.      LaTosha Scott, Legislative Administrative Assistant II, Statutory Review Section, Legal Division – Promoted July 21, 2016, previously Legislative Administrative Assistant;

      f.      Ashley Miller, Administrative Assistant to the Administrator, Committee Staff Services Section, Research Services Division – Promoted December 12, 2022, previously Legislative Administrative Assistant II; and

      g.      Corlis Johnson, Office Services Supervisor, Director's Office – Promoted October 1, 2012, previously Legislative Administrative Assistant (direct report to the director).

*Id.*, ¶ 35.

36.    North filed an internal complaint with BLR alleging racial discrimination on February 17, 2023. *Id.*, ¶ 36.

37.    BLR contracted with Carolyn Witherspoon an attorney with Cross, Gunter, Witherspoon & Galchus to serve as an independent investigator in order to conduct the investigation into North's complaint, as required by BLR Policy and the law. Ms. Witherspoon was not engaged to represent or defend BLR. *Id.*, ¶ 37.

38. As a result of Ms. Witherspoon's investigation, North was found to have recorded a conversation with her supervisor, in violation of BLR policies, refused to cooperate with an investigation that she requested with her February 17, 2023 complaint, engaged in bullying and harassing behavior of her supervisor, and making false and reckless allegations. *Id.*, ¶ 38.

39. North appealed Ms. Witherspoon's findings to the Executive Subcommittee of the Legislative Council, and the Executive Subcommittee upheld the findings of the independent investigation. *Id.*, ¶ 39.

40. North was terminated from employment with BLR on May 9, 2023, due to having been found by the independent investigator and the Executive Subcommittee to have violated multiple provisions of the BLR Employee Policy Manual over a short period of time in early 2023, which are documented and substantiated in Exhibits 6 and 7 to BLR's Motion for Summary Judgment. *Id.*, ¶ 40.

41. A former white female BLR employee was terminated upon a finding that the employee had recorded a meeting without disclosing that she was doing so. *Id.*, ¶ 41.

42. North's termination was not carried out for any discriminatory or retaliatory reason. *Id.*, ¶ 42.

43. North testified at her deposition that if she "was asked to do job duties, depending on the job duties, and it applied to someone else's position and I wasn't in that position, I would say that's discrimination." Exhibit 17, p. 136; ln. 21-23.

44. North testified that every decision made by BLR that she disagreed with or she believed wronged her was discrimination based on her race. Exhibit 17, p. 138; ln. 15-22.

45.     North complained to Director Garrity about pay inequity but never told Director Garrity that North believed the inequity was due to discrimination based on North's race. Exhibit 17, p. 153; ln. 22 – p. 154; ln. 10, p. 97; ln. 5 – p. 98; ln. 7.

46.     North testified that she does not know how the merit increase raises are decided each year. Exhibit 17, p. 77; ln. 20-21, p. 79; ln. 6-8.

47.     North filed her Charge with the EEOC on May 2, 2023, and an amended Charge on May 24, 2023. A copy of the Charge is attached to BLR's Motion for Summary Judgment as Exhibit 18. The Amended Charge only added that North was terminated on May 9, 2023.

48.     North's Charge states the earliest date discrimination took place was 2022. Exhibit 18.

                                                    Respectfully submitted,

                                                    TIM GRIFFIN
                                                    Attorney General

Carl F. "Trey" Cooper, III
Ark Bar No. 2007294
Senior Assistant Attorney General
Office of the Arkansas Attorney General
BOB R. BROOKS JR. JUSTICE BUILDING
101 West Capitol Avenue
Little Rock, AR 72201
Phone: (501) 682-3658
Fax:    (501) 682-2591
Email: trey.cooper@arkansasag.gov

*Attorneys for Defendant,*
*Bureau of Legislative Research*