IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


KENDRA DRONE-NORTH                                                      PLAINTIFF


VS.                              CASE NO. 4:24-CV-00405 LPR


ARKANSAS BUREAU OF LEGISLATIVE RESEARCH                      DEFENDANT


PLAINTIFF'S BRIEF IN SUPPORT FOR HER
MOTION TO AMEND

Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), and pursuant to the Fourteenth Amendment to the United States Constitution, in order to recover damages against the defendant for the unlawful employment practices that the plaintiff **Kendra Drone-North** has been subjected to on account of her race and in retaliation for having complained about discriminatory treatment. The plaintiff also seeks relief pursuant to 42 U.S.C.S. § 1983, in that the unlawful employment practices were committed by the defendant while acting under color of law. This is also an action for declaratory judgment pursuant to 28 U.S.C.S. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

The plaintiff wishes to amend her complaint to allege that she was the victim of retaliation when she was denied promotions to the legislative analyst positions. The Court should allow the amendment pursuant to Rule 15 and 16 of the Federal Rules of Civil Procedure.

Statement of Facts

Ms. North started working for the Bureau of Legislative Research (BLR) in 2006 as an Administrative Assistant. (**See North's depo., Doc. 17-17, p. 4, Tr. 14-15**).  The Administrative Assistants perform clerical type duties, and they are assigned to work with Legislative Analysts. The Administrative Assistants put the packets together for the legislators during their committee meetings. (**See North's depo., Doc. 17-17, p. 5, Tr. 18**).  The Legislative Analyst is responsible for setting up the meeting room, making sure that the committee meetings are recorded, as well as performing any necessary research.  A legislative analyst is assigned to an Administrative Assistant. When Ms. North started, she was assigned to an analyst by the name of Regina Wilson. (**See North's depo., Doc. 17-17, p. 5, Tr. 19**).  Ms. North was initially hired in as an Administrative Assistant I, and was later promoted to the Administrative Assistant II position sometime in 2016 or 2017. (**See North's depo., Doc. 17-17, p. 6, Tr. 21**).

After graduating from high school in 1989, Ms. North went to Pulaski Tech, which was in 2010.  Ms. North obtained two (2) associate degrees from Pulaski Tech. (**See North's depo., Doc. 17-17, p. 4, Tr. 15-16**).   In 2019, Ms. North obtained her bachelor's degree from the University of Arkansas at Little Rock (UALR).  (**See North's depo., Doc. 17-17, p. 10, Tr. 40**).

Ms. North was initially supervised by Phil Price, who was an administrator.  Then Ms. North was supervised by Estella Smith, which was around the time of 2010.  Estella Smith became the Administrator after Mr. Price on September 3, 2019. (**See North's depo., Doc. 17-17, p. 5, Tr. 20**).  Estella Smith is an African American female. (**See North's depo., Doc. 17-17, p. 6, Tr. 24**).  Starting in 2010 Ms. North noticed that white employees who started after her and were making more money than she was making.  (**See North's depo., Doc. 17-17, p. 6, Tr. 23**).

2

In 2015, Ms. North began to apply for various positions within the BLR, but was being turned down with BLR hiring lesser qualified white candidates. (**See North's depo., Doc. 17-17, p. 8, Tr. 31**).  Sheri Thomas was hired as a permanent employee by BLR on April 16, 2007. (**See North's depo., Doc. 17-17, p. 6, Tr. 24**).  When Ms. Thomas was hired, Ms. North and another African American female employee by the name of LaTasha Scott were tasked with training Ms. Thomas. (**See North's depo., Doc. 17-17, p. 7, Tr. 26-27**).

On September 23, 2015, Ms. North applied for her first promotion which was the Administrative Assistant to the Administrator.  However, that position was awarded to Judy Steelman, who is a Caucasian employee.  At the time of her promotion, Ms. Steelman possessed only a high school education.  Ms. North had two (2) associates degrees, and a proficiency in accounting. Also, Ms. North was doing the majority of the work as the Administrative Assistant to the Administrator. (**See North's depo., Doc. 17-17, p. 8, Tr. 32**).  Ms. North spoke with Marty Garrity, who is the Director of BLR, about why she was not being promoted to the position, but Ms. Garrity did not provide an answer. (**See North's depo., Doc. 17-17, p. 9, Tr. 33**).  Ms. North applied for the Legislative Analyst position on August 22, 2018. (**See North's depo., Doc. 17-17, p. 10, Tr. 38**).  However, the Legislative Analyst position was awarded to a white female by the name of Katie James-Clark.  Although Ms. North had more tenure with BLR than Ms. James-Clark, and had trained analysts, she was still passed over for the analyst position. (**See North's depo., Doc. 17-17, p. 10, Tr. 39**).  Ms. North again applied for a legislative analyst position in August 2019. (**See North's depo., Doc. 17-17, p. 10, Tr. 40**).  Actually, during August 2019, Ms. North applied for two (2) legislative analyst positions, but they both were awarded to two (2) white females, who were less qualified than Ms. North. The first position was awarded to an external

candidate, and the second was awarded to a white male as well. (**See North's depo., Doc. 17-17, p. 11, Tr. 41**).

Actually, the second analyst position was awarded to a white male by the name of Dalton Coleman. Although Mr. Coleman possessed a master's degree, he had no experience in working as an analyst. Again, Ms. North was performing work as an analyst, and had trained analysts. (**See North's depo., Doc. 17-17, p. 11, Tr. 42-43**). Ms. North created a list of all the positions that she applied for. (**See Plaintiff's Exhibit "A"**). The reason why Ms. North knew the qualifications about the person is because whenever Director Garrity hired or promoted a person, she created a snapshot of the person that had their picture, and had their qualifications. (**See North's depo., Doc. 17-17, p. 11, Tr. 43-44**). Ms. North applied for other analyst positions, that will be discussed later herein. Barbara Brown and other African American BLR employees also applied for analyst's positions, which traditionally have been reserved for Caucasians.

Although Ms. North has been a loyal and dedicated employee of the Arkansas Bureau of Legislative Research (BLR), she has not been able to break through the glass ceiling becoming a legislative analyst. Ms. North had gotten great performance evaluations while she worked for BLR. During Ms. North's May 1, 2018 to April 30, 2019 performance review Estella Smith wrote:

> Kendra is very organized, professional, hardworking, and knowledgeable about her job duties and the legislative process. Kendra's responsibilities over the years have made her well-rounded who is able to manage various tasks. Kendra works with little or no supervision, taking pride in producing a quality work product.
>
> Kendra is a great employee and is liked and respected by all. She is always punctual and a good steward of her leave. Recently the vice chair of her House committee gave glowing compliments regarding Kendra and Barbara and how well they serve the committee and anticipates needs before they are stated.
>
> Kendra has not been shy in expressing her thoughts on what she views as pay inequity and stays informed regarding the salaries of various employee[s]. She cites helping new analysts learn their job duties as not part of her regular job duties.

4

We have discussed this before and my position is that because the analyst and AA are a team, sharing knowledge should be an expectation just as when an analyst shows an AA how to format a document or other Word/Excel feature. In addition, many analysts now prepare meeting agendas which traditionally was the responsibility of the AA.

It is my hope that Kendra moves past bringing up what occurred over nine years ago. Annual self-evaluations cover a one-year period and there is no need to rehash the same events over and over.

(**BLR Plaintiff's Exhibit B-1  – 001362**)

During Ms. North's performance evaluation for the period of May 1, 2019 – April 30, 2020, Sheri

Thomas wrote:

Kendra is very organized, professional, hardworking, and knowledgeable about her job duties and the legislative process. She provides great service to the members of the General Assembly and anticipates the needs of her committee members. Kendra is well prepared for each meeting and takes pride in her work product. She requires minimum supervision and is willing to help new administrative assistants.

During this review period, Kendra assisted with 12 out-of-town meeting for the joint  retirement Committee, in addition to other regular committee meetings. Kendra assisted the analyst in organizing and planning for the off-site meetings. Kendra was able to prioritize her assignments and completed the meeting minutes before the deadline. Her committees met a lot during the last six months and she handled it well. Her hard work and dedication to the Joint Retirement Committee was noticed.

(**See Plaintiff's Exhibit B-2 - BLR 001358**)

During the plaintiff's performance evaluation for the period of May 1, 2020 – April 30, 2021 Sheri

Thomas wrote:

Kendra is very organized, professional, hardworking, and knowledgeable about her job duties and the legislative process. She is well prepared for each meeting and takes pride in her work product. She requires minimum supervision and is able to prioritize work assignments to meet deadlines.

She is willing to help new administrative assistants and temporary employees when asked. Kendra assisted a few times with setting up for the Education Committee meetings and helped the analyst with putting meeting packets in the binders.

5

During session she volunteered to stay late to cover the office and to help out as necessary.

Kendra is professional in her interactions with colleagues, agency personnel and members of the legislature.  She enjoys working with Barbara and ensures all meeting documents are available.  During session while Barbara was absent Kendra ensured that the analyst had copies of all documents that were needed for the committee meeting.

(**See Plaintiff's Exhibit B-3 - BLR 001348**)

During the plaintiff's performance evaluation for the period of May 1, 2021 – April 30, 2022, Sheri Thomas wrote:

When the need arises, Kendra readily agrees to fill in to staff meetings in the absence of the assigned administrative assistant.  Kendra assisted with the first few meetings for the Alzheimer's Disease and Dementia Advisory Council and created the sign-in sheet, minute template, and other committee documents to share with the new assistant.  Additionally, she attended the next meeting with the newly hired administrative assistant to ensure meeting procedures were followed and the meeting was properly set up.  Kendra assisted with creating binders for the Education Committee members for the adequacy study.

Kendra is a team player.  She participates in organizing office functions by coordinating contributions, gifts, and items for activities.  She gets along with her coworkers and enjoys working with Barbara.  Kendra is dependable and flexible. When using unplanned accrued leave, she is conscientious in submitting leave as soon as she returns to the office.

(**See Plaintiff's B-4 - BLR 001344**)

Procedural Facts

The plaintiff filed her complaint on May 7, 2024 alleging that she was the victim of discrimination based on her race and retaliation for having complained about discrimination.  In the retaliation section of the plaintiff's complaint, she avers that when she was again passed over for the legislative analyst position, she filed an internal complaint of discrimination on February 17, 2023.  (**ECF Doc. No. 1, p. 8, ¶ 56**).    The plaintiff alleged that on May 9, 2023, she was

terminated in retaliation for having complained about acts of discrimination.   (**ECF Doc. No. 1, p. 8, ¶ 62**).

On November 4, 2024, the Court entered its final scheduling order, providing the date of June 12, 2025 to amend the pleadings, and setting the trial of this matter for December 9, 2025. On August 12, 2025, the Court entered an amended scheduling order setting a new trial date of February 17, 2026, with "all motions" except motions in limine, having to be filed no later than October 13, 2025. (**ECF Doc. No. 12, p. 2**).

On June 16, 2026, the Court held a hearing on the defendant's motion for summary judgment.  Undersigned counsel was specifically asked whether the complaint alleged that the plaintiff was retaliated against by being denied a promotion to the legislative analyst position.  In looking at the complaint, undersigned counsel had to acknowledge that the complaint only alleged that the plaintiff was retaliated against by being terminated.  The plaintiff requested that the Court should allow her to amend the complaint to allege that she had been retaliated against when she was denied promotions to the legislative analyst positions in light of having discovered a "smoking gun."[1]

Statement of Law

The plaintiff wishes to amend her complaint to add that she was denied the promotion to the legislative analyst position due to having complained about acts of discrimination.   "Under Rule 15(b), an issue not raised in the pleadings, but tried by express or implied consent of the parties, 'shall be treated' as having been raised in the pleadings."  Fed.R.Civ.P.  Thus, '[s]uch

---

[1] The Court indicated that it was inclined to grant the defendant's motion for summary judgment on the race discrimination claims, i.e., denial of promotions, pay equity, and termination.  However, the Court indicated that it may grant the defendant's motion for summary judgment on the retaliation termination claim, but needed to give that some additional thought.  The Court indicated that had the complaint alleged retaliation in reference to the denial of promotion to the legislative analyst position, it would not have granted summary judgment, in light of statements attributed to Marty Garrity that she would not have promoted Ms. North to this position due to her complaints of pay inequity.

amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." Baker v. John Morrell & Co., 382 F.3d 816, 830 (8th Cir. 2004), *citing* IES Industries, Inc. v. United States, 349 F.3d 574, 579 (8th Cir. 2003).   In the case at bar, the defendant filed its motion for summary judgment on December 8, 2025.  In the defendant's statement of undisputed material facts, No. 32, it states in part: "In June 2020, Director Garrity did make the statement that North would never be promoted to an analyst position because of her constant negativity and poor attitude.   Until North's behavior changed, Director Garrity would not reward her with a promotion…." (**ECF Doc. No. 27, p. 36**).

The plaintiff was deposed on October 7, 2025.  During her deposition, the plaintiff was being asked about why she believed that she was not allowed to be promoted to the legislative analyst position.  The plaintiff stated that she came across a note that stated Marty Garrity would never promote Ms. North to the legislative analyst position due to her complaining about pay disparity based on race. (**ECF Doc. No. 17-17, pp. 9-10**).  The defendant knew of this issue of failure to promote based on retaliation as early as October 7, 2025.  The defendant then admitted that Ms. Garrity did in fact make this statement, but tried to say it was for other reasons. (**ECF Doc. No. 27, p. 36**) (**See Attached Exhibit**).

Pursuant to Rule 15(b)(1), "[i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence."  Therefore, even during trial, the court can allow an amendment to take place.

Pursuant to Rule 15(a)(2), "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

> Rule 15(a) governs the pretrial amendment of pleadings and states that where an amendment is not sought 'as a matter of course' — as defined by the Rule — 'a party may amend its pleading only with the opposing party's written consent or the court's leave.' Fed.R.Civ.P. 15(a)(2).  The Rule  provides that '[t]he court should freely give leave when justice so requires.' Id. But parties do not have an absolute right to amend their pleadings, even under this liberal standard. United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005).  A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.' Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal marks omitted).

Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012).

In the case at bar, the plaintiff is attempting to amend her complaint, after the time allowed by the scheduling order.  Rule 16(b)(4) provides, "[a] schedule may be modified only for good cause and with the judge's consent."

> Our precedent establishes that '[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule.' *Id*. at 716 (altercations in original) (*quoting* Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008)).  'Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).'  *Id*. (*citing* Popoalii, 512 F.3d at 497).  'Because [the Hartises] filed [their] motion to amend [their] complaint [25] months after the scheduling deadline for amending pleadings, '[u]nder [Rule] 16(b), [the Hartises] needed to show cause in order to be given leave to amend.' *Id*. (fifth alteration in original) (*quoting* Popoalii, 512 F3.d at 497).
>
> 'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.' *Id* (*quoting* Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006)).  We generally 'will not consider prejudice [to the nonmovant] if the movant has not been diligent in meeting the scheduling order's deadlines.' *Id*. at 717. Instead, we 'focus in the first instance (and usually solely) on the diligence of the

party who sought modification of the order.' *Id*. Where there has been 'no change in the law, no newly discovered facts, or any other changed circumstances… after the scheduling deadline for amending pleadings.' then we may conclude that the moving party has failed to show good cause. *Id* at 718.

Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012).

The Court in Hartis, *supra*., held that the Hartises were not diligent because they waited over two (2) years after the court's deadline to amend. In the case at bar, the original deadline to amend the pleading was set for June 12, 2025.  The plaintiff's complaint alleges that she was the victim of discrimination based on her race, when she was denied promotions to the legislative analyst positions, and that she was discriminated against based on her race when she was paid less than her white counterparts, and that she was discriminated against based on her race, when she was terminated.  The plaintiff further alleges that she was retaliated against when she was terminated due to having complained about discrimination.  Although the plaintiff's charge of discrimination alleges that she was retaliated against due to having complained about discrimination when she was denied promotional opportunities to the legislative analyst position, this specific allegation was not alleged in her complaint.   However, the defendant treated the complaint as if it was alleged, because Statement of Fact No. 33 admits that Marty Garrity did in fact make the statement. (**ECF Doc. No. 27, p. 36**).

In the case of Kmak v. American Century Companies, Inc., 873 F.3d 1030 (8th Cir. 2017), the plaintiff attempted to amend his complaint seven (7) months after the court's scheduling order had expired for amending complaints.  The trial court denied the motion to amend based on the following reasons: a) the amended complaint "would greatly expand the scope of the case, extending it to transactions that have not been at issue….", b)  Kmak was not diligent, and c) the court held that the new claims were futile.  However, that is not the case here.  If the Court allows the plaintiff to amend, the amendment would not expand the scope of the case, and there would

not be a need to conduct additional discovery.  Also, as this Court has previously noted, the

additional retaliation claim is not futile.   The defendant was under the assumption that this claim

of retaliation based on denial of promotional opportunities to the legislative analyst position,

because it was raised in the Statement of Facts – No. 33, and the plaintiff was asked about it during

her deposition.

"A district court should freely give leave to a party to amend its pleadings when justice so

requires, Fed.R.Civ.P. 15(a); however, it may properly deny a party's motion to amend its

complaint when such amendment would unduly prejudice the non-moving party or would be

futile."   Popoalii v. Correctional Medical Services, et al., 512 F.3d 488, 497 (8th Cir. 2008),

quoting, Kozohorsky v. Harmon, 332 F.3d 1141, 1144 (8th Cir. 2003).

> A decision whether to allow a party to amend her complaint is left to the sound
> discretion of the district court and should be overruled only if there is an abuse of
> discretion.  Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998).  A court
> abuses its discretion when it denies a motion to amend a complaint unless there
> exists undue delay, bad faith, repeated failure to cure deficiencies by amendments
> previously allowed, undue prejudice to the non-moving party, or futility of the
> amendment. Id.  When late tendered amendments involve new theories of recovery
> and impose additional discovery requirements, appellate courts are less likely to
> hold a district court abused its discretion  Id.  If a party files for leave to amend
> outside of the court's scheduling order, the party must show cause to modify the
> schedule. Fed.R.Civ.P. 16(b).

Popoalii v. Correctional Medical Services, et al., 512 F.3d 488, 497 (8th Cir. 2008).

In the case at bar, the defendant cannot point to anything that the plaintiff did that would

constitute bad faith.  The current status of the case is that it is pending the Court's ruling on the

defendant's motion for summary judgment.  The case was taken off the trial docket to allow the

court to make a decision on the defendant's motion for summary judgment.  If the Court allows the

amendment, there will not be undue delay, nor will there be a need to conduct additional discovery.

Undersigned counsel has not been guilty of repeated failures to cure deficiencies.  The amendment

would add a claim that certainly is viable.  This handwritten note was discovered sometime after the case was filed.  It is believed that the note was discovered during discovery.[2]

In conclusion, the Court should allow the plaintiff to amend her complaint to add the claim of retaliation for the denial of promotional opportunities for the legislative analyst positions.  The defendant will not be prejudiced by this amendment, nor will it cause unnecessary delay.  The defendant certainly cannot claim prejudice, in that the plaintiff was questioned about this matter during her deposition, and the defendant raised this issue in their Statement of Undisputed Facts.

Respectfully submitted,

Austin Porter Jr.
Bar Number 86145
PORTER LAW FIRM
The Tower Building
323 Center Street, Suite 1300
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
E-mail: Aporte5640@aol.com

## **CERTIFICATE OF SERVICE**

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas – Central Division, on this 24th day of June 2026, using the CM/ECF system, which is designed to send notification of such filing to the following:

Carl F. "Trey" Cooper III.
Senior Assistant Attorney General
Office of the Attorney General

---

[2] Undersigned counsel is not sure when this handwritten note was discovered.  However, this note was found sometime prior to the deposition of the plaintiff, and it was turned over to counsel for the defendant.  Nevertheless, undersigned counsel just assumed that the retaliation claim, as alleged in the complaint referenced the failure to promote to the legislative analyst position, but it did not.

12

Bob R. Brooks Justice Building
101 West Capitol Avenue
Little Rock, Arkansas 72201

Email: trey.cooper@arkansasag.gov

Austin Porter Jr.